We have today five cases. Four of the cases are scheduled for oral argument. One of our cases, 18-2268, has been decided on the briefs. So we'll move to our first argument, which is Valeo North America v. Schaeffler Technologies, 18-1196. Councilor Mattson? Yes, Your Honor. Did I pronounce your name correctly? Is it Mattson? Mattson, yes. Okay, and you're reserving three minutes of your time for rebuttal? Three minutes for rebuttal. Okay, and Mr. Oliver? You're reserving three minutes of time for your cross-claim, is that correct? Yes, Your Honor. Okay. All right. You may proceed. Thank you, Your Honor. May it please the Court. The sole question raised by Valeo's appeal is whether the Board erred in finding that substitute claims 19 and 25 yielded unexpected results. The Board's conclusion was wrong, first, as a matter of law, because there was no comparative testing between the closest prior art and the claimed subject matter, and second, because there's no substantial evidence to support a conclusion of unexpectedness. What the Board did is they relied on – Why is the first a question of law? When the Board decides what's the closest prior art, isn't that still a factual question? That is a factual question, Your Honor, but here there is no comparative testing with the prior art that the Board identified as closest or any other prior art. Well, I thought the Board identified the prior art that said the even-tuning was the closest prior art, and the unexpected results here were that the prior arch said over-tuning would lead to bad results, and it actually led to good results. Right. So what the Board identified was the Sudow and Holler references as the closest prior art, and there was no testing of those prior art absorbers. We're talking about vibration absorbers. There was no testing of those absorbers at even-tuning or any other tuning. This is important because Schaeffler's own expert, Dr. Parker, said that a pendulum absorber's performance depends on the type of vibration absorber. So what Schaeffler did is they made up a vibration absorber, gave the results to Dr. Parker, their expert, and that's what he had to work with. And he couldn't explain during his deposition how Sudow or any of the other prior art would work because Sudow has a different type of absorber. Did Sudow disclose even-tuning? Sudow doesn't say what tuning is used. Sudow says what you do is you match the absorber to the order of excitation. So what one of ordinary skill in the art would have understood is you need to match the natural frequency of the absorber to the order of excitation. But it does not disclose even-tuning. That's correct. And this is black-letter law. Getting back to your question, Judge Hughes, about a matter of law, even if Schaeffler had or the board had identified the right prior art, the results must be shown to be unexpected compared to the closest prior art. And here, that step of the analysis wasn't even performed. And there's no evidence that... Well, I take it your position is the error, the real error, is the board had used the range in Eccles to invalidate the original claims, and that's what they needed to show unexpected results over. That would have been one test result that would have provided some probative evidence about what one of ordinary skill in the art would have expected? Isn't that the way this normally works is you have an invalidating piece of prior art, and particularly in these range cases, and you say this range includes the patented range, so it's presumptively invalid, but then they can prove unexpected results or all other kinds of things to show even though that range was there, the particular point we selected was not. But the board didn't do that analysis, did it? It didn't compare Eccles to the over-tuning. Oddly enough, it did for the patented claims, right? It didn't do it for the proposed amendment. Well, it didn't do it for either claim. What Schaefer asked the board to do and what the board did is they inferred from the trough that's in the order sweep, that's where the ideal tuning is. But the real error, getting back to... Maybe I was unclear. I thought that for its invalidation of the original claim to use the range in Eccles. Yes, that's correct. So it just seemed to me odd that when they looked at the proposed amendments, they didn't look at Eccles again. Right, and there was no comparative testing of Eccle or any other prior art to give us an idea of what one of ordinary skill in the art would have expected. What the board did is they took one of ordinary skill in the art and they disadvantaged that person by saying that they would have to guess at what the prior art result was. And we don't have that prior art result. And that's the starting point for one of ordinary skill in the art, what they would have expected when you look at what the prior art results are. Now, even ignoring that failure to compare the results of the closest prior art, whether it's Eccle or Haller or Soudal, with the claim device, an artisan still would have expected that the tuning value could be adjusted to achieve the best possible result for a given absorber. And there's three points. It's a very intensive record in terms of the number of facts, but there's three points I'd like to make. First, there's not a single prior art reference that teaches that even tuning is optimal in oil. All instances in the record, whether it's a declarant or someone's deposition testimony or a reference, whenever even tuning is best, if you look at the underlying absorber, it's operating in air. And this is common sense. Anyone would expect that a moving component like an absorber, a pendulum absorber, would operate differently in oil than in air, and it's also supported by some of the references. Let me ask you one question. On Appendix 103, we have the patent and Figure 1B. I've been trying to understand. Maybe I have it right. Maybe I have it wrong. But where is the oil in there? What chambers? Because you reminded me this. You just brought up the point about oil. Where is the oil? Right. So this entire chamber, most of it in Figure 1B, is going to be filled up with oil. So everything within the most extreme outer line is totally oil? I believe that that's correct. Not just what's in 6? That's right. That's the actual torque converter component, what they call the hydrodynamic component. Okay. So you're saying oil is all throughout the chamber? Yes, Your Honor. One other question. What is the difference precisely? We have these terms linear and nonlinear system. Okay. What is the difference between those systems? So the curvature of the swing paths of the pendulum assumes that sine theta equals theta, if you want to get mathematical. And for small swing angles, that's correct. But when the vibration has to get larger and this pendulum is swinging farther and farther back and forth, that starts to break down, and then you get nonlinearities. And there's a different set of prior art, in particular the Nestor reference, and we're not appealing the Board's decision on Nestor, where you over-tuned, in that case, 2.15 to account for the nonlinearities. But what's claimed in the patent, does that involve a system that's linear or nonlinear? Or am I just misunderstanding what you just said? Don't hesitate to say if I am. So this is a point that we raised before the Board, and we said the claim covers both linear and nonlinear systems because there's no claim limitation that limits this. What about the system, though, a device linear as opposed to nonlinear? Just the amplitude of the vibrations. Okay. The other point, or one of the other points I wanted to make, was that one of ordinary skill in the art understands the implications of tuning if vibrations are made worse. Schaeffler's expert, Dr. Parker, again admitted that if you add an absorber to a system and it actually makes the vibrations worse, Dr. Parker admitted that one explanation that would occur to one of ordinary skill in the art is that tuning is not optimal. Thus, even based on Schaeffler's test device, which isn't representative of the prior art, an artisan still would have recognized that even tuning is not best in oil. And third, tuning by its very nature assumes that the tuning parameter can be optimized so that you can get the best result. So one of ordinary skill in the art wouldn't have just been stuck at even tuning. Indeed, the tuning parameter is the one result effective variable that you can change to optimize the results. And this is even a special case because you can calculate what the optimum amount of absorption is. This is Dr. Parker's formula in the appendix at 2495. So this isn't just a predictable art. The optimum result obtainable is calculable. And an artisan would know to keep adjusting the tuning. This is the trial and error that our expert, Dr. Shaw, and this has also been talked about in some of the papers, trial and error process that you adjust the tuning until you get the optimum result. The board also found in considering level of skill in the art that an artisan would have an understanding of the influences on a pendulum absorber in different operating environments. So what the board did, getting back to Judge Hughes' original question, I think, is the board was focused on the wrong expectation and required an artisan to guess how an absorber would operate in oil instead of actually having the results from the prior art. For example, Soudal, where there's actually an absorber operating in oil, the artisan would have that result from the prior art. And that's what they should have been focused on. This is similar to the— Well, the board did make a finding that Posido would not have been expected to make a different type of tuning for an oil environment, right? That's a finding that the board made. Right, and that finding misses the point because it's not based on what the prior art actually is. Eccles, Soudal, and Holler, the board didn't look at what the results of those references or those absorbers yielded. Did any of those prior art references have test results? They do not, Your Honor. The speck art reference is interesting because it even mentions the trial and error process of tuning and says you can also use computer simulation to adjust the tuning, and it has a tuning range of plus or minus 0.15%. But this is similar to the Pfizer case, where this court reversed a district court because the court should have considered the results obtained from the prior art and didn't, and here what the board should have been focused on was the expectation of whether adjusting the tuning value would achieve the maximum absorption capacity. That's what one of ordinary skill in the art would have been considering, and that's the basis for which the analytic basis for which the expectation should have been viewed. You're close to your rebuttal time. Do you want to stop here? I will stop here, Your Honor. Thank you. Thank you. Mr. Oliver, you have 12 minutes. Good morning. May it please the Court. Before responding to Vallejo's appeal arguments, I'd like to address what we believe to be the most important and straightforward legal issue in this case, specifically in the cross appeal. Specifically, the board's finding of lack of commensurateness with respect to substitute claim 14. You're addressing your cross appeal now? Yes. I thought you were reserving your three minutes to do that. I was reserving three minutes to rebut any arguments made concerning the cross appeal. On the cross appeal, okay. Specifically, the board's finding of lack of commensurateness with respect to substitute claim 14 presents a clear legal error. First, the board's stated basis for finding lack of commensurateness relates to an alleged failure to recite the environment in which unexpected results were demonstrated. However, both the CCPA and the Federal Circuit case law have previously cautioned the board that such is not a proper legal standard. Second, the board raised this requirement for the first time in the final written decision, thus depriving Schaeffler of the opportunity to respond to that legal error. In particular, in addressing unexpected results, the board found a lack of commensurateness because substitute claim 14 does not recite the excitation order of the engine in which the unexpected results were found. The invention itself is a torque converter or a forced transmission device in the form of a torque converter. Torque converters are used in various types of engines. It could be a two-cylinder engine or a three-cylinder engine or a 12-cylinder engine. But the engine itself is the environment in which the invention works. It is the environment in which the unexpected results are demonstrated. Established case law, including Inree Chup and Inree Ackerman, Senator Ambrieve, specifically hold that it is not necessary to recite the operating environment in which unexpected results are demonstrated for the proper finding of commensurateness. For this reason, we believe the board's decision concerning substitute claim 14 and the claims that depend therefrom should be reversed or at the very least remanded for a proper consideration of the legal issue of commensurateness. So your argument is that Vallejo, before the board, never argued or based an argument based on the claim Q ranges? Correct. Vallejo made a commensurateness argument, but it was with respect to small swing angles. The swinging of the pendulum. But if you're arguing for unexpected results, it's not their burden to demonstrate the lack of unexpected results. It's your burden to demonstrate unexpected results. It's our burden. So the fact that they didn't make a specific argument rebutting that doesn't mean that the board can't make its own determination that you haven't met your burden of production. We're not arguing that on an issue of burden of production specifically. We're arguing that on a notice issue concerning the Administrative Procedures Act. Specifically, the idea that the excitation order should have been recited in substitute claim 14 was raised for the first time in the final written decision. So we were afforded no opportunity to respond to that argument. So our concern with the idea that Vallejo never raised the idea of the rest. Whether they raised it or not seems completely irrelevant because they could say nothing and you could still lose because you didn't meet your burden of production. I understand that, Your Honor. The argument we're trying to make is because this issue was first raised in the final written decision, we had no opportunity to inform the board that their legal analysis concerning commensurateness was incorrect. Our argument is their finding in the final written decision that you would have had to recite the excitation order, which is the environment in which the invention works in the claim, is contrary to case law concerning in-reach up and in-recommend. We didn't raise that because it's not a legal requirement for us to recite the environment to establish commensurateness. The fact that the board required that or made their decision based on that in the final written decision is a... I'm not sure why you're arguing that as an APA problem rather than just as legal error by the board to do that on the merits. We're arguing both, Your Honor. Primarily that it was a legal error, but it was a legal error to which we did not have an opportunity to respond. Had the board raised this or the lawyer raised this, we would have actually been able to point out in-reach up or in-recommend and say you've got the law wrong, but we're not afforded an opportunity to do so. Can you... I understand where you are on this. Can you address their appeal? I'm baffled why the board used ECHLs, the range in ECHLs, as an invalidating source for overtuning of the original claims and then didn't look to that as the prior art for the proposed amendments. Certainly, Your Honor. There's a few reasons for that. First and foremost, for the original claims, the board made a finding specifically at pages 12 and 13 of the decision that the recitation of an oil influence in the original claims was not limited to the rotating oil of a torque converter. Substitute claim 14 and the claims that depend from therefrom, including claim 19, actually recites a torque converter with rotating oil. ECHL does not disclose a torque converter or rotating oil. This can be actually found in the record. Sure, but that's not what I'm concerned about, about whether it discloses oil or not. It seems to me that what the board found was it looked to a different reference and said the reference, the prior art discloses even tuning. Is that the right term? Correct. And you have unexpected results because you do overturning. And it looked at a reference other than ECHLs. And so even if ECHLs doesn't deal with oil, it does deal with overtuning, doesn't it? It has a range that includes overtuning and at least references that it can be used with lubricants. Why didn't the board look at ECHLs for overtuning? Certainly, Your Honor. The critical issue is what would have been expected at the time. A person with a skill in the art would have expected even tuning to work best. And we can basically break down the references into two categories. So are you saying the original claims, none of them were confined to oil, and so ECHLs was okay for the range there, but your proposed amendment specifically confined it to an oil atmosphere and therefore ECHLs wasn't good enough? Yes, but specifically rotating oil. The argument was made that the recitation of oil influence in original Claim 1 was rotating. Where does the board explain that's why it's not using ECHLs? Well, it explains why it is not adopting that understanding of oil influence at pages 12 and 13 of the decision. It finds that the oil influence in Claim 1 is not limited to rotating oil. However, Substitute Claim 14 does recite rotating oil and does recite a torque converter. ECHL does not describe a torque converter. So can you just answer my question specifically? Sure. I know you're reciting generally to that. In this discussion, do they explain this is why we're not looking to ECHLs? No, but I would direct your attention to that I'll find the state, Your Honor. I mean, it just seems an odd way of doing things to me. When we have these range cases and somebody proposes unexpected results for something in the range, you always look back to that prior art range and say why the unexpected results, even though falling within the range, are still unexpected. But the board didn't do that for your proposed for the amended claims. Well, it was argued below, and let me address that a few ways, Your Honor. With respect to the Substitute Claims, it was noted that ECHL did not recite a torque converter with rotating oil. So either Soudow or Holler were discussed as describing the rotating oil environment. So that is why I believe they went with Holler instead of ECHL, because there was that additional recitation of rotating oil. That being said, the references can be described or broken down into two categories. There are references that talk about the idea of tuning. And if you look at each of those references, they describe that even tuning works best. That includes ECHL. ECHL itself, and I believe— Sure, and if the board had said even though ECHL discloses its range, it teaches away from over-tuning or it prefers even tuning or the like, it would have made more sense and at least probably would have been substantial evidence. But when they completely ignore ECHLs for your amended claims, when they use that same precise range to invalidate the original claims, it seems logically inconsistent. Well, the finding that the board made, and that is in view of ECHL as well, because ECHL suggests that if you want to improve damping, you even tune. If you look at the Nesta reference or the Speckhardt reference, they all say the same thing. If you want to improve performance, you even tune or you get closer to even. Speckhardt even suggests under-tuning. So the expectation the board found was looking at the prior art and say the prior art tells us that if we want to improve results, we even tune. The testing was provided relative to that understanding from the prior art. Whether you pick ECHL, whether you pick another reference, that would have been the expectation at the time, that even tuning improves performance. And that was true except when you're operating in rotating oil. Claim 14 recites the over-tuning operating in rotating oil. And it was unexpectedly found that in that invention, in that torque converter with rotating oil, over-tuning improved performance rather than degraded performance. And what was understood in the prior art was one thing. Even tuning worked best. You could slightly over-tune, but that would degrade performance but extend the operating range of the device. What happened in the rotating oil environment claimed is the exact opposite. Over-tuning improved performance but actually reduced the operating range. And that is the distinction that was found as the closest prior art, including ECHL, which doesn't describe a torque converter, said that if you move closer to even tuning, you will get improved damping results. And I believe that's at 909 of the appendix. That was the factual finding that the board made, that the expectation at the time, whether you pick ECHL, whether you pick Holler, the expectation was the same, is that over-tuning would degrade performance. And what was shown by the test results is that in the claimed test range, over-tuning improved performance. And that was what was unexpected. And what the board is doing is making a determination of would the person of ordinary skill in the art have expected this result. And the answer was no, and we believe that answer would have been the same regardless of what particular piece of prior art is chosen. And I'd note, considering the Henry Holliday case, that the applicant may choose what reference and the board may choose what reference. That Vallejo doesn't agree with what the closest reference is goes to the problem here that no reference is particularly close. You either have references that talk about rotating well, such as Holler, but they don't say anything about tuning. Or you have references that talk about tuning, including Nestor, Speckhardt, and ECHL, and they all say that if you even tune, it works best. And that was wrong. Okay, you're in your rebuttal time right now. Thank you, Your Honor. You've got a little bit over three minutes, Mr. Matson, if you need the time. Thank you, Your Honor. The first point I'd like to make is about ECHL. And the board did find that ECHL's range overlapped with the ranges in the substitute claims where the analysis breaks down, again, with comparing the closest prior art, and there's no comparison of ECHL's results. In this case, perhaps the most probative evidence of what one of ordinary skill in the art would have expected would have been what ECHL's results were, which we don't have. And, again, whenever the board or Schaeffler says that even tuning is working best, that's always in the context of error, and it ignores the tuning ranges in ECHL. On the issue of commensurateness, I think the DuPont-Wiese-Winne case that we cited that came out after a briefing was complete resolves this issue about the burden. In Schaeffler's brief, they talk about a burden of production shifting back or to the petitioner, but that's not the case. The burden of production is always on the patent owner trying to show unexpected results, and what they have to do is show that the range is a critical range. And here, the board found, and the board's interpretation of the test results is not even contested, the board found that for any excitation order, the ranges covered results that were no better than or worse than the prior art. And the patent itself only discloses a single embodiment, which is a four-cylinder engine which gives excitation order two. And all of the ranges in the patent are in the context of a four-cylinder engine with second-order excitation. And there has been no criticality established for any of those ranges, given that they cover situations where the results are worse. The Inouye-Chup case is distinguishable because there, the compound always provided superior results for corn and soybeans. Here, as I just mentioned, you've got ranges that give you inferior results for portions of those ranges. The Inouye-Johnson case, I think, discusses Holliday and says that Holliday doesn't stand for the proposition that the patent owner only has to test one reference. That's not the way it works. And there, the applicant tested one reference but not another, and the court found there were no unexpected results because there was no evidence that the testing of one reference was representative of how the other reference would have behaved. In conclusion, if there are no more questions, what Schaeffler is asking is that the court broaden the unexpected results analysis to include testing and consider testing relevant, even if it's a comparison between the invention and a device that here yields the worst possible results, irrespective of whether that device is even representative of the prior art. This is a major departure from all of the cases that ask whether there was an expectation that adjusting the prior art parameter would improve the results. In other words, one of ordinary skill in the art has the results of the prior art, and then the question is, what would one of ordinary skill in the art expect if the critical parameter was changed? Okay, well, thank you. Thank you. Mr. Oliver, you have two and a half minutes. Thank you, Your Honor. Justice Hughes, with respect to your question, I'd direct you to the Board's consideration at page 61 of the fact that the newly recited features in Substitute Claim 14, including the torque converter and rotating oil, were present in Soudal, but not in ECHL. How does that relate to your cross-appeal? Well, to our— Aren't you up on rebuttal for your cross-appeal? I was just answering your— That's fine. I have your answer from your previous argument. Okay, thank you. With respect to the cross-appeal, Your Honor, the INRI CHUP is informative here. Vallejo argues that there were test results in the range that did not show unexpected results, but that is not the issue. INRI CHUP states that the invention need not produce superior results in every environment in which the compound may be used.  What we have here in the claim range is basically a genus. It is a genus of overtuning amounts that are comprised of a number of species, each species of which shows unexpected results in Substitute Claim 14. It happens that the unexpected results happen in various environments. One species works best in a two-cylinder engine. Another species works better in a nine-cylinder engine. But each of those species were demonstrated to have unexpected results. The burden that the Board applied was that we didn't recite the excitation order of the engine, but that's the environment. And INRI CHUP says you don't have to show that it works in every environment, and it doesn't matter that it might not work in some environments because no one is going to use an invention where it doesn't work. That's a pharmaceutical case? It is not a pharmaceutical. It's a weed killer, so it's a chemical case. It's a compound. So I would equate INRI CHUP to a species, and what the Board says is you have a species that works well in some environments but not in others, but it doesn't matter because all you need to show is that it works in an environment. What we have in the present case is a genus with a number of species, and we have shown that each of those species work in different environments. And INRI CHUP says we do not need to recite each environment in the claim, but that is the exact burden or requirement that the Board imposed, and it is contrary to INRI CHUP as well as INRI Ackerman, which reached the same conclusion in the CCPA. Okay. I believe we have your arguments, and we thank the parties for their arguments. Thank you.